Good afternoon, Your Honor. Steve Lathrop on behalf of Appellant Stephen Brown. I want to wait just a minute or so. All right. Sorry. You ready? You may proceed. Thank you, Your Honor. The crux of the problem, and I say the problem here, is the reason why Mr. Brown's trial was fundamentally unfair. I think it can really be summed up in what the Court of Appeal has written in its opinion. And that was the last reasoned opinion of any court. Of course, in analyzing this issue, it's at Excerpts of Record.11, and that's also page 11 of the Court of Appeal's opinion. The Court of Appeal doesn't cite any Federal decisions with respect to whether the California CalJEC instructions deprived an appellant of a fundamentally fair trial. They do make the statement, however, that they discuss how the jury was instructed. And the crux of the issue here is that the jury was instructed that if it finds that the prior uncharged misconduct occurred by proponents of the evidence, it can infer that the appellant did commit the current crime, did commit it. It doesn't have to. And again, it also added the additional language that you can't solely base it on that. But they can infer that he did commit the current crime. And at page 15, the Court of Appeal, also Excerpts of Record 15, the Court of Appeal states, while evidence of uncharged crimes may not be introduced to prove a defendant's conduct on a specific occasion, it can be introduced for intent, modus operandi, and everything else. And the problem here is that it appears that the trial court was admitting the evidence, not for conduct, recognizing, as the Court of Appeal has recognized here, that you cannot be introduced to prove a defendant's conduct on a specific occasion, but that yet the way they instructed, the instruction doesn't say, for instance, that the jury can use the propensity evidence to as evidence of the defendant's veracity, for instance. Roberts. Sotomayor, I'll ask you to stay right in front of that mic. Yes, Your Honor. You don't have to lean in any further, but you're moving around a bit. Thank you, Your Honor. I'll stand right here. And we want to have a good, clear recording of your argument. Thank you, Your Honor. The jury was non-instructed, for instance, that it could use the prior uncharged misconduct as evidence of defendant's veracity or, for instance, of evidence of an intent in the present case to arouse a sexual desire. That was an element of the offense. He was charged with one count of Penal Code Section 288A, which is non-forcible lewd conduct with a child. So the – but rather the instruction allowed the jury to find and infer that the conduct in the current case occurred. Now, the additional language doesn't cure the problem. And the additional language was that the jury was instructed that, well, there has to be something else also. You can't find solely on the basis of a finding by a preponderance. Isn't that additional language similar to the – to the new version of these jury instructions? Cal CRIM. Right. I believe Your Honor is correct. It's not identical. No, it's not identical. But why isn't it close enough? I mean, why isn't it – why doesn't that just take care of the problem that we recognized in Gibson? I think the reason why it's addressed, Your Honor's question directly, is that Henry Winship requires proof beyond a reasonable doubt of every fact necessary to establish conviction. And the reason why the other instruction is that it's not sufficient is, I think, can be found in the fine colloquy. If I'm in the jury room as a juror and the foreperson is Mary, and, you know, Mary says, look, you know, he's – the evidence here is in conflict. The defendant was living with this family for a year. He could have molested or raped the child at any time during that year. He'd choose – you know, there's a molest. The last week he's in the house. There's a major problem he's having with the common law. It's not with his girlfriend who he's been living with for a year. It's a step. And the jury – Mary could say, look, you know, whether the touching occurred, we don't know beyond a reasonable doubt. I mean, it's a judgment call. I mean, even in the prosecutor's closing argument, the prosecutor says, everyone had bias in this case. And why would this person wait a whole year only to do it one time? The prior incident was a year and a half – evidence occurred every day for a year and a half. I mean, when – Weren't there some pretty substantial differences between what happened in this case and what happened in Gibson in addition to the language Judge Paez pointed out? I don't think – I don't think so, Your Honor. Didn't the prosecutor in Gibson argue the preponderance standard to the jury? Yes. That didn't happen here, did it? No. No. It actually did. I mean, the prosecutor, although stated several times in offense, also stated in general terms that you've got to prove every element of the offense beyond a reasonable doubt, at page 740 of the reporter's transcript, line 14, the prosecutor states in the opening part of the closing is, in other words, you can consider the fact that the defendant had a very similar pattern with Jacqueline Hopkins in determining whether he is, in fact, guilty in this case. If you find that the prior evidence has been proven by a preponderance standard, then you have to go back to the evidence. Yeah, but the problem in Gibson was that the prosecutor, if not directly saying it, inferred to the jury that the preponderance standard applied to the main offense charged in before them, correct? I believe you're correct, Your Honor. That's one of the defects that Gibson found in the old instruction. Yes, Your Honor. But if you come back to In re Winship and the constitutional requirement, the defendant, the prosecution, the State has to prove every fact necessary for the conviction beyond a reasonable doubt. And here you have jurors certainly left with these instructions that could say, look, we don't know whether he had the opportunity. I could envision a scenario, a reasonable scenario where it says, look, we find by preponderance that over the last, when he was 12 and 13, he committed these prior sexual offenses.  We assume that jurors follow instructions. And we can envision the discussion in the jury room where one juror says, well, if he did that other thing, he must have done this. And some other jurors are saying, wait a minute. The judge told us specifically we could not base guilt on the charged offenses solely on the basis of the uncharged act. So you're wrong, fellow juror. But what that allows is a jury to convict on a scintilla of evidence in the current case. Not exactly, counsel. It's more like if there's conflicting evidence, there are a number of things that can allow a jury to decide that the evidence on one side leaves them without a reasonable doubt. And to me, reading all the instructions together in this case, it seems to me no more than saying that this is one means of alleviating your doubt. And I'm not sure why that's a problem if the charged act has to be proved beyond a reasonable doubt and the evidence of the prior act is not sufficient. So just like questions of bias, just like other factors that a jury can weigh to remove doubt, it seems to me that this is nothing more than one way of resolving doubt. Now, why is that constitutionally insufficient? Because the instruction permits a finding of committing the current crime based on the prior offenses doesn't, I think a correct instruction would have been to instruct that they could consider a veracity or intent, whether you have this intent to satisfy sexual desire. But when the instruction says that if you find the prior by a preponderance, you can infer that he committed the present crime. There's no logical nexus there. That's an indirect attack on evidence code section 1108. I don't know. With all due respect, I don't think so, Your Honor. We're talking about how the jury was instructed. And I think under these instructions, and I put this in the brief, that really all they were really required to find was a corpus delecti of the crime, that he was there, had the opportunity, and not resolve the difficult veracity issues under these instructions and simply say, look, he did it before for a year and a half. He had the opportunity to do this. And, you know, we're going to find that we're going to convict him of the crime. I mean, I think if you look at this case, evidence with this instruction that the jury was able to use a year and a half worth of sexual misconduct many years earlier to prove one instance. There was only one allegation in this case. And he had lived in the house for a full year. Do you want to save any time for rebuttal? Yes, I want to save the remaining time if I may. Thank you, Your Honor. Thank you. Thank you for your argument. We'll give you a minute when you come back up. Good afternoon. May it please the Court. John Yang on behalf of the respondent. I'd like you to help me understand the difference between Gibson and this case. Do you have a clean sheet of paper there in front of you and a pen? Here's what I'd like you to do. I'd like you to draw a box. And that box is the defendant committed the prior offense. Okay. And then draw a second box. From that, you can infer a predilection to commit future offenses. And then draw a line out from that to guilt. Now, tell me how those boxes are different for this case as opposed to Gibson, which said you couldn't do that. You couldn't use the preponderance of evidence standard to establish box one, get to the inference in box two, and from that, go to guilt. How is this case different from that? I believe that there's language in Gibson which suggests that the biggest problem that the court had with that particular instruction was that it allowed the jury to entirely base a conviction on the uncharged act. That leads to my next question. Could a normal, rational juror, most of them are untrained in the law, the normal, rational juror listen to the additional instruction in this case, which tells the jury they cannot do it based solely on the uncharged acts, and point to box two and say we're not doing it based on box one, we're doing it based on box two? Your Honor, yes. That's the rational juror could, even with this instruction, come to the basic conclusion because he committed the prior offense, he must have committed this offense. Well, I don't think so. Tell me what's wrong with that logic. Well, I don't think so because of the just absolute clarity and the lack of ambiguity as to the insertion of that new language into the pre-1999. Well, back in the same jury room I put your opponent in, and imagine someone reading that additional instruction about solely and a juror saying I'm not doing it solely based on the prior offense, which is box one, I'm doing it based on box two. However, in order to get from box one to box two, Your Honor, an inference needs to be drawn, and there are instructions that are given which are standard, and it was given in this case which says that inferences also have to satisfy reasonable doubt. Okay. But this rational juror in my scenario is saying I'm in box two, which is different from the prior, from box one. It's different from that prior uncharged offense which they proved by preponderance of the evidence. I'm basing my conclusion that this guy's guilty based on that. And wouldn't that offend Gibson, and wouldn't that offend the notion that beyond reasonable doubt has to apply to the guilt phase? Well, in order to get from box one to box two, the instruction itself tells the jury that that's not the only ñ that cannot be the only way for you to get from box one to box two. It sounds to me like you're telling me that it would be okay for a juror to do what I just described. You're telling me that there are some protections that get you from box one to box two, but that once you get to box two, a rational juror using these instructions could say once I'm in box two, this guy's guilty. Maybe from ñ to get from box one to box two, and if box two is to serve as the evidence of guilt, then, Your Honor, it's not just that box two can be separated from box one. It's one entire package. And if it's one entire package that is going to serve as the basis of a conviction, then that specific clear language tells them they cannot do that. They have to use other evidence to get there. Doesn't that ñ doesn't the new instruction absolutely prevent what I've just described? The new instruction, meaning the post-2002? Yeah, the new CALJAC 2.5.01. I believe that it tells them to do that just as well as the ñ this particular instruction that we're talking about here. Well, it tells them two things that are different from not only this instruction but the Gibson instruction. One is it's not sufficient by itself to prove beyond a reasonable doubt that the defendant committed the charged crime, correct? Right. That's correct. It also tells at the end of the instruction, very importantly, this inference is simply one item for you to consider along with all the other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. That's not present in this case, is it? We would submit that with a juror reading the entire ñ But that new instruction tells them clearly that the inference is just one part of the puzzle. It's very clear. And that in any case, the State has to prove this crime beyond a reasonable doubt. And the instruction here doesn't do that. It's very clear. The new instruction is clear that they tell them that they cannot, based on one conviction on that ñ on that one single uncharged act. However, the gist of it and the essence of it is we would submit already reflected in not only this particular instruction in question that we're focusing on in this case, but also in other instructions that are also present for the jury to look at as a whole. They are, in fact, told to view the instructions as a whole. Can you imagine this ñ these instructions being used in, say, a bankruptcy ñ a bank robbery context? Box 1 gets filled because a teller said, I think I saw Joe Smith in the bank the day that it was robbed. And I'm pretty sure he was hanging around the other person who robbed the bank. And by a preponderance standard, that gets you to the prior offense. You confer that he's got a predilection to rob banks. And from that, you get to guilt beyond a reasonable doubt? Maybe there's many things that are pretty much loaded in Your Honor's hypothesis ñ hypothetical. I think one is ñ I think maybe pertain to counsel's subsequent claim that it's an irrational inference that one who commits a prior sex crime would commit the instant one. I don't know whether Your Honor is addressing that or Your Honor is still ñ I'm just asking you if you could imagine this procedure being used in a standard crime, bank robbery. I cannot envision it in a bank robbery because sex crime is a unique animal of itself, and there are studies that support that people who have committed a sex crime have a good likelihood to commit it again. They have this propensity, if you will, or inclination to commit it again. So I cannot imagine it, this particular instruction, being in a bank robbery case to answer Your Honor's question. Isn't the case in any event sui generis? Unique on its own? Yeah. That's what it meant when I took Latin. Right. In the respect that it pertains to sex crimes, yes. It pertains to sex crimes. This is the only one hanging around the system. Gibson took care of the stuff after it. The new instruction clearly takes care of future cases. Sure. And this is one of the remaining ones. This is the three-legged horse, isn't it? Yes. That's correct. And what we're trying to say is that this instruction, as modified by the trial judge in this case, adequately conveyed the essence of the new instructions, which is that it tells the jury unambiguously that It's not as bad as Gibson, and it's not as good as the new instruction, but it's close enough for government. Right. And viewed in the spectacle of the AEDPA, where we determine the reasonableness of the court of appeals decision and determine the contrary to Supreme Court precedent, when we pay that deference to the court of appeals, then we can confidently say that the court of appeals did not act unreasonable in saying that this particular instruction would not have misled the jury. And I think that's very important. But even with that aside, the instruction itself is very unambiguous, and it follows at the heel of the problematic language that, you know, that was the focus of Gibson. And so it sort of serves as a clarification. And with that clarification, the defect in Gibson is cured. And that's basically our position. And unless Your Honor is having any questions. I don't see any other questions. Thank you very much for your time. Thank you, Your Honor. You've got about a minute for rebuttal, counsel. There are a lot of these cases out there, as the Court could imagine. This pre-post-1999 CALJIC instruction set of instructions has been given undoubtedly, and I've seen it personally in numerous cases. I handle state court appeals. I strictly handle appeals. You see this. In every case where there's a prior sex offense and a sex crime, the jury is instructed in this manner. And I can't agree with Your Honor more that what the jury has been left here with is that if you find the prior that the offense occurred, you can find that the conduct in this case occurred. And then the jury is left to guess what other evidence you pull. I mean, how do you apply that? And that's the specific over the general. I mean, that's the other. They were given general instructions beyond a reasonable doubt. How do you respond to the fact that this is an AEDPA case in reasonable application or contrary to? The Court of Appeals. Even if we were to find error, we have to find that it was unreasonable. It's something I've been searching for for many years to truly understand that. In this case, maybe you can help me understand it. Yes, Your Honor. In this case, the last reasoned decision of the California State Court was the Court of Appeals does not mention, doesn't cite any Federal decisions at all. It's pages 11 to, I think, 14 of the executive record, which also corresponds to the opinion. And those four pages which deal with this jury instruction, what the Court of Appeals says is that under falseta, California Supreme Court decision, that the California Supreme Court has found that this is fine. It doesn't violate due process. There's no analysis. There's no analysis of U.S. constitutional law. Okay. I don't see any other questions. Thank you very much for your argument. Very interesting case. We appreciate both sides' argument. And the case just argued will be submitted for decision.
judges: Hawkins, Graber, Paez.